**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:26-CV-20943-BB

SHIFT CAPITAL, INC.,

     Plaintiff,

v.

ATIF BAWAHAB, IINN, Inc., and INSIGHT
MANAGEMENT AND CONSULTING
SERVICES, INC.

     Defendants.

## <u>MOTION TO DISMISS</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Atif Bawahab ("Bawahab"), IINN, Inc., and Insight Management and Consulting Services, Inc. (the "Insight Companies") move to dismiss the Complaint filed by Plaintiff Shift Capital, Inc. ("Shift") [ECF No. 1].

### I. INTRODUCTION

This case concerns two agreements entered into in June and July 2024 (the "June 2024 Agreement" and "July 2024 Agreement" respectively). Shift knowingly and voluntarily entered into both agreements, but after one of the contracting parties (a non-party to this case) filed for bankruptcy, Shift filed suit alleging that it was fraudulently induced into entering into the July 2024 Agreement. That claim fails and must be dismissed because (1) the Insight Companies are not parties to that Agreement; and (2) the Complaint fails to satisfy Rule 9(b). Shift also brings an unjust enrichment claim, which should be dismissed because it is contradicted by the plain language of the underlying agreement.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (quotations and citation omitted).

"Where a cause of action sounds in fraud, the heightened standard in Federal Rule of Civil Procedure 9(b) also must be satisfied." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1297 (S.D. Fla. 2017). Under that rule, "a party must state with particularity the circumstances constituting fraud," though scienter may be alleged generally. Fed. R. Civ. P. 9(b). "This rule serves an important purpose, both in 'alerting defendants to the precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

## III. ARGUMENT

Shift brings claims for fraudulent inducement and unjust enrichment, each of which should be dismissed for failure to state a cause of action.

### A. Count I Fails to Plead Fraudulent Inducement with the Requisite Particularity

To state a claim for fraudulent inducement under Florida law, a plaintiff must particularly allege that "(1) the representor made a false statement concerning a material fact; (2) the representor knew or should have known that the representation was false; (3) the representor

intended to induce another party to act in reliance on the false statement; and (4) the party acted in justifiable reliance on the representation and was injured as a result." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029-30 (11th Cir. 2017) (citation omitted). Rule 9(b)'s particularity requirement is satisfied only when the plaintiff identifies "the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S.*, 32 F.4th at 1307.

Applying this well-settled rule, in *Dennis v. Whirlpool Corp.* the court dismissed a complaint alleging fraud because it failed to "allege what statements Defendants actually made or should have made[.]" No. 06-80784-CIV-RYSKAMP/VITUNAC, 2007 WL 9701826, at *7 (S.D. Fla. Mar. 13, 2007). Instead, the complaint simply made "conclusory" allegations that the defendants "misrepresented the characteristics and qualities" of certain refrigerators without "giv[ing] a single example" of the alleged misrepresentation. *Id.*

Here, with respect to the Insight Companies, the Complaint suffers from a similar flaw. Count I alleges in conclusory fashion that Defendants (writ large) made "Fraudulent Misrepresentations for the purpose of inducing Shift to enter, and perform on, the July 2024 Agreement," Compl. ¶ 37, and attributes certain conduct to Bawahab. However, the Complaint is silent as to what representations the Insight Companies themselves made, much less when, where, and how they were made. *See Omnipol, A.S.*, 32 F.4th at 1307.

Shift seeks relief based on two alleged contractual misrepresentations identified in Sections 22 and 25 of the July 2024 Agreement—neither of which were made by the Insight Companies. *See* Compl. ¶¶ 24, 28, 33. Each section contains representations expressly made only by each "Merchant" to the July 2024 Agreement. *See* Compl., Ex. B at 7 ¶ 22 ("Each Merchant represents . . . ."); Ex. B at 7 ¶ 25 ("Each Merchant represents . . . ."). The July 2024 Agreement defines "Merchant" as CarePoint Health Systems Inc. "and all merchants listed in the 'Merchant List

3

Addendum[.]'" Compl., Ex. B. at 2. These additional merchants are "IJKG OPCO LLC," "HUDSON HOSPITAL OPCO LLC," "INSIGHT CHICAGO INC," and "HUMC OPCO LLC." *Id.*, Ex. B at 27-28. The Insight Companies are not identified. As non-parties to the July 2024 Agreement, the Insight Companies could not have and did not make the identified contractual representations to Shift, warranting dismissal of this claim as to the Insight Companies.

Count I also fails against all Defendants because the Complaint does not sufficiently allege how the purported fraudulent scheme was accomplished. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1070 (11th Cir. 2007) (dismissing complaint for failure to plead fraud with specificity when it lacked details on how the defendants accomplished the fraud); *Barrakuda Ltd. v. Zazaby Jewels, Inc.*, No. 19-23004-CV-MARTINEZ-OTAZO-REYES, 2020 WL 7493097, at *6 (S.D. Fla. Sept. 24, 2020) (applying *Martinez* to fraud/fraudulent inducement claim); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. Aug. 18, 2017) (dismissing fraudulent concealment claim in part because the "Complaint contain[ed] no allegations specific to . . . how each of the Defendants accomplished the fraudulent concealment."); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013) (dismissing fraudulent concealment claim in part because "Plaintiffs d[id] not allege the specifics of Honda's purported scheme, the means Honda used to perpetrate the scheme, or specific facts indicating the existence of the alleged scheme."); *accord MathStar, Inc. v. Tiberius Capital II, LLC*, 712 F. Supp. 2d 870, 883 (D. Minn. 2010) (dismissing fraud count premised upon an allegation that the "Feltl Parties also had inside and confidential information" for "lack[ing] the requisite particularity because Tiberius ha[d] not identified what information Feltl had," among other things, thereby leaving the defending parties

and the court "left to speculate what 'inside and confidential information' the Feltl Plaintiffs had[.]")[1].

In *Barrakuda Limited*, the court encountered a fraud/fraudulent inducement claim premised upon the defendant companies' owner who "leveraged the goodwill between the parties to persuade Plaintiff to place another order and . . . to pay in advance" for certain products without sufficiently providing the items sought. 2020 WL 7493097, at *1. In dismissing this claim, the court explained that it "fail[ed] to satisfy the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b)" because "[t]he only statement referenced in the Complaint" was that the owner "had the ability to immediately obtain the [p]roducts," which the counter-plaintiff alleged was a "lie." *Id.* at *5. In other words, the counter-plaintiff failed to plead any details as to how the fraud was accomplished. *See id.* (citing *Martinez*, 480 F.3d at 1070).

Similarly, here, Shift alleges that "in light of Insight Management's business relationship with CarePoint, Bawahab and the Insight Companies would have had insider knowledge of CarePoint's financial condition[.]" Compl. ¶ 27.[2] Because the Complaint fails to identify what "insider knowledge" or "business relationships" Defendants leveraged to accomplish the alleged fraud, Shift fails to state a claim upon which relief can be granted.

---

[1] The elements to a claim of fraud under Minnesota law are nearly identical to and materially the same as under Florida law. *Compare MathStar, Inc.*, 712 F. Supp. 2d at 883, *with Global Quest, LLC*, 849 F.3d 1029-30.

[2] Shift also conclusorily alleges that "[u]pon information and belief, [Defendants] engaged in a fraudulent scheme to enter into the July 2024 Agreement in order to transfer their liability to CarePoint[.]" Compl. ¶ 31. The court can and should disregard this allegation as being insufficient to support a claim for fraud. *See Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178-ALTONAGA/Seltzer, 2018 WL 3360754, *6 (S.D. Fla. June 29, 2018) ("[A]llegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

**B.  Count II Must Be Dismissed Because Defendants Were Not Unjustly Enriched**

Shift's unjust enrichment claim is premised upon certain alleged benefits it conferred to Defendants "[b]y entering into the July 2024 Agreement[.]" Compl. ¶ 41. This claim should be dismissed because it is contradicted by the exhibits to the Complaint and is otherwise precluded.

First, Shift claims that "the Insight Companies were released from $6,140,100.00 in payment obligations under the June 2024 Agreement[.]" *Id.* This is not evident from the July 2024 Agreement. Under Addendum P to the July 2024 Agreement, the "Merchant(s) instruct[ed] SHIFT to pay up to $6,280,080.00 of the Purchase Price set forth in the Agreement to [*sic*] instead of to Merchant(s)." *Id.*, Ex. B at 26.

Based on the plain text of Addendum P, the July 2024 Agreement did not require Shift to pay any portion of the purchase price from the July 2024 Agreement towards obligations under the June 2024 Agreement (or to the Insight Companies, which were not even mentioned in the July 2024 Agreement). Any payment made to pay down payment obligations under the June 2024 Agreement, therefore, would be voluntary and unrecoverable as a matter of law absent a separate agreement not identified in the pleadings. *See Kissner v. McDonald's Corp.*, No. 18-CV-61026-WPD, 2018 WL 5832979, at *4 (S.D. Fla. Nov. 2, 2018) (quoting *Ruiz v. Brink's Home Sec., Inc.*, 777 So. 2d 1062, 1064 (Fla. 2d DCA 2001) (agreeing that unjust enrichment claim, even if sufficiently pled, would be barred under Florida's voluntary payment doctrine); *City Nat'l Bank of Fla. v. Signature Land, Inc.*, 397 So. 3d 1133, 1135 (Fla. 5th DCA 2024) (citation omitted) ("[T]here is no liability in restitution for an unrequested benefit voluntarily conferred[.]")

Second, Shift seeks relief against Bawahab, claiming that by entering into the July 2024 Agreement, "Bawahab was released from his obligations under the Personal Guaranty" in the June 2024 Agreement. Compl. ¶ 41. The July 2024 Agreement relieved Bawahab of the personal

guaranty from the June 2024 Agreement only insofar as Shift voluntarily paid off the payment obligations imposed by the June 2024 Agreement. Thus, just like its claim against the Insight Companies, Shift's claim against Bawahab fails because any payment was voluntarily made.

Third, Shift claims that "Shift transferred $2,005,952.00 to the Insight Companies pursuant to the July 2024 Agreement," Compl. ¶ 41, but the July 2024 Agreement does not contain any provision requiring the transfer of that sum to the Insight Companies (which, again, are not parties to that agreement or mentioned in it). The transfer referenced by Shift appears to be the "Net Amount to Be Received Directly by Merchant(s)" identified on page 2 of the July 2024 Agreement (the "Net Amount"). *Id.*, Ex. B at 2. However, the merchants identified in that Agreement did not include the Insight Companies. *See id.*, Ex. B at 2, 26. Because "[a]n action for unjust enrichment cannot be used to relieve a party from the terms of the contract it entered," this allegation cannot serve as the basis for an unjust enrichment claim against the Insight Companies. *Bouverat v. Park W. Gallery, Inc.*, No. 08-21331-CIV, 2008 WL 8922892, at *4 (S.D. Fla. Dec. 22, 2008) (citation omitted); *see also* 42 C.J.S. *Implied Contracts* § 60 (2026 update) ("[A] court may not make a better contract for the parties through an unjust enrichment claim than they have made for themselves, and unjust enrichment may not supplant, circumvent, or bypass the terms of an agreement.").

## IV. CONCLUSION

For the reasons set forth above, Defendants request that the Court dismiss the Complaint and grant such other relief as the Court deems proper.

Dated: April 6, 2026                                     Respectfully submitted,

                                                         /s/ Charles Throckmorton
                                                         FOLEY & LARDNER LLP
                                                         Charles Throckmorton (FBN 101203)

7

charles.throckmorton@foley.com
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: (305) 482-8400

Evan Farrara (FBN 1066098)
Evan.farrara@foley.com
100 North Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 225-4114

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on April 6, 2026, the foregoing document was electronically

filed through CM/ECF, thereby serving electronic notice to all counsel of record.

*/s/ Charles Throckmorton*